```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - X
                                                    ECF CASE
ELEANORA M. PATANE,                :
                                                    05 Civ. 10219 (WCC)
                Plaintiff,         :

        - against -                :                OPINION
                                                    AND ORDER
JOHN RICHARD CLARK, HARRY B. EVANS, :
DAVID STUHR, GEORGINA ARENDACS and
FORDHAM UNIVERSITY,                :

                Defendants.        :
- - - - - - - - - - - - - - - - - - - X
```

**A P P E A R A N C E S :**

LOVETT & GOULD, LLP
**Attorneys for Plaintiff**
222 Bloomingdale Road - Suite 305
White Plains, New York 10605

DRITA NICAJ, ESQ.

    Of Counsel

HARRINGTON, OCKO & MONK, LLP
**Attorneys for Defendants**
81 Main Street, Suite 215
White Plains, New York 10601

KEVIN J. HARRINGTON, ESQ.
JOHN T.A. ROSENTHAL, ESQ.

    Of Counsel

**Copies E-Mailed to Counsel of Record**

**CONNER, Senior D.J.:**

Plaintiff Eleanora M. Patane brings this action claiming discriminatory treatment based on gender and retaliation in violation of (1) Title VII, 42 U.S.C. 2000e, *et seq.*; (2) the New York Human Rights Law ("NYHRL"), New York Executive Law § 296; and (3) the New York City Human Rights Law ("NYCHRL"), New York City Administrative Code § 8-101, *et seq.* against defendants John Richard Clark, Harry B. Evans, David Stuhr, Georgina Arendacs (the "individual defendants") and Fordham University ("Fordham") (collectively "defendants"). Defendants' move to dismiss pursuant to FED. R. CIV. P. 12(b)(1) and (6) and, in the alternative, move to strike certain allegations from the Complaint pursuant to FED. R. CIV. P. 12(f). For the reasons stated herein, defendants' motion to dismiss is granted, and their motion to strike is therefore denied as moot.

## BACKGROUND

Plaintiff is the Executive Secretary in the Classics Department (the "Department") at Fordham. (Complt. ¶ 9.) Clark was the chair of the Department in 1998, when plaintiff was hired.[1] (*Id.*) Plaintiff alleges that in 1998 Clark "on many occasions" brought his nine or ten-year-old daughter to the Department offices where "she would sit straddling one of his legs and rubbing her groin back and forth in front of staff." (*Id.* ¶ 10.) The following academic year, 1999-2000, Sarah Pierce took over as Department chair. (*Id.* ¶ 12.) Plaintiff alleges that at this time Clark brought a TV-VCR into his office and began watching "hard core" pornographic materials for one to two hours

---

[1] It is unknown what plaintiff's exact responsibilities were and in what degree she served the Department or the individual professors. It is known that part of her responsibilities included handling the Department's mail, *see* Complt. ¶ 13, yet, it can reasonably be implied that her responsibilities were directed towards both.

1

each day. (*Id.*) Plaintiff asserts that during this time she "observed Clark approximately every twenty minutes rush past her—with his face flushed—on the way to the men's room for the apparent purpose of masturbating." (*Id.*) In addition, as Department secretary, plaintiff received and handled Clark's mail, which often contained sadomasochist videotapes. (*Id.* ¶ 13.) Plaintiff also claims that she found "hard core" websites on her computer, which she attributes to Clark. (*Id.* ¶14.) However, those sites were removed and plaintiff's computer was given password protection. (*Id.*)

Plaintiff alleges that she complained to Arendacs, the Director of Equity and Equal Opportunity Department at Fordham's Bronx Campus ("Fordham EEO"), about Clark's conduct in 1999-2000. (*Id.* ¶ 13.) Arendacs allegedly took no remedial action to address this problem, although she did report it to Stuhr, the Vice President of Academic Affairs. (*Id.*) It is unclear what Stuhr did in response.

In 2001, Clark was reappointed Department chair. Plaintiff alleges that in response to her complaints to Arendacs, Clark removed many of her secretarial functions and refused to communicate with her except through e-mail. (*Id.* ¶ 15.) Plaintiff claims that she overheard Evans, another Department professor, secretly advising Clark, "[D]on't give her any more work, this will make her leave." (*Id.*) From 2001 to 2003 Clark apparently continued to watch pornographic materials in his office unabated. (*Id.* ¶ 16.) During the winter of 2003, Clark allegedly brought his daughter into the office and, on one occasion, plaintiff observed her put her hand in Clark's front pocket, "apparently groping him." (*Id.* ¶ 17.) However, during this time plaintiff made no further complaints.

In January 2004, plaintiff again reported Clark's behavior to Arendacs and complained about her reduced job responsibilities, showing Arendacs thirty-six pornographic videotapes found in

Clark's office. (*Id.* ¶ 18.) In the apparent absence of any action by Arendacs, plaintiff complained directly to Stuhr in March 2004, also showing him the videotapes. (*Id.* ¶ 19.) In May 2004 Stuhr promised to take remedial action. (*Id.*) Plaintiff complains that during this time she informed Arendacs that she wanted to file a formal sexual harassment complaint but that Arendacs never provided her with the proper paper work. (*Id.* ¶ 20.) During this time, plaintiff alleges that Clark continued to watch pornographic materials in his office. (*Id.* ¶ 21.)

On August 27, 2004, plaintiff filed a grievance with her union representative. (Rosenthal Decl., Ex. B.) On September 13, 2004, plaintiff wrote a letter to Arendacs expressing her desire to file a formal complaint with the Fordham EEO. (*Id.*, Ex. C.) On Septemeber 28, 2004, however, Arendacs sent a letter to plaintiff addressing her complaints and stating that, as Director of the Fordham EEO, she would not pursue the charges further because plaintiff allegedly indicated that she "did not wish to pursue the issues raised in [the] August 27th letter." (*Id.*) On October 4, 2004, plaintiff claims that she informed Arendacs that she still wished to pursue a complaint, and on November 9, 2004 plaintiff filed a charge of discrimination with the United States Equal Employment Opportunity Commission ("EEOC") alleging discrimination on the basis of gender and retaliation against Fordham, Clark, Arendacs and Stuhr. (Complt. ¶¶ 23, 24; Rosenthal Decl., Ex. F.)

At the beginning of the Fall 2004 semester, Evans was appointed as Department chair. (Complt. ¶ 25.) Plaintiff alleges that as a result of her complaints against Clark, Evans monitored her telephone calls and whereabouts, encouraged her to falsify time sheets and issued a negative performance review on her. (*Id.* ¶¶ 25-27.) The performance review gives plaintiff the highest marks in all categories, but bears additional comments noting that her attitude could be less hostile

3

to certain employees. (Rosenthal Decl., Ex. E.) The review praises plaintiff's work ethic, efficiency and organization. (*Id.*)

On September 9, 2005, the EEOC issued a Notice of the Right to Sue, and plaintiff filed her Complaint on December 6, 2005. Defendants move for dismissal of plaintiff's claims for various procedural and substantive reasons including: (1) statute of limitations; (2) no individual liability under Title VII; (3) no personal liability under the NYHRL or the NYCHRL; and (4) lack of subject matter jurisdiction over claims against Evans for plaintiff's failure to properly exhaust her administrative remedies under Title VII. In the alternative, defendants' move to strike certain statements made in the Complaint pursuant to FED. R. CIV. P. 12(f).

**DISCUSSION**

**I.      Motion to Dismiss Standard**

On a motion to dismiss, the issue is "whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), *overruled on other grounds*, *Davis v. Scherer*, 468 U.S. 183 (1984). A complaint should not be dismissed for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Padavan v. United States*, 82 F.3d 23, 26 (2d Cir. 1996) (quoting *Hughes v. Rowe*, 449 U.S. 5, 10 (1980)). Generally, "[c]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." 2 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 12.34[1][b] (3d ed. 1997); *see also Hirsch v. Arthur Andersen & Co.*, 72 F.3d 1085, 1088 (2d Cir. 1995). Allegations that are so conclusory that they fail to give notice of the basic events and circumstances on which plaintiff relies

4

are insufficient as a matter of law. *See Martin v. N.Y. State Dep't of Mental Hygiene*, 588 F.2d 371, 372 (2d Cir. 1978).

"In assessing the legal sufficiency of a claim, the Court may consider those facts alleged in the complaint, documents attached as an exhibit thereto or incorporated by reference . . . and documents that are 'integral' to plaintiff's claims, even if not explicitly incorporated by reference." *John v. N.Y. City Dep't of Corr.*, 183 F. Supp. 2d 619, 627 (S.D.N.Y. 2002) (Conner, J.) (internal citations omitted). On a motion to dismiss pursuant to Rule 12(b)(6), a court must accept as true all of the well-pleaded facts and consider those facts in the light most favorable to the plaintiff. *See Hertz Corp. v. City of New York*, 1 F.3d 121, 125 (2d Cir. 1993); *In re AES Corp. Sec. Litig.*, 825 F. Supp. 578, 583 (S.D.N.Y. 1993) (Conner, J.).

**II.     Title VII and NYHRL**

Title VII requires employers to provide an atmosphere free of sexual abuse or hostility. *See Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 64 (1986). "When the workplace is permeated with 'discriminatory intimidation, ridicule, and insult' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment,' Title VII is violated." *Harris v. Forklift Sys.*, 510 U.S. 17, 21 (1993) (quoting *Meritor Sav. Bank*, 477 U.S. at 65, 67) (internal citations omitted); *see also Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 570 (2d Cir. 2000). Section 296(1)(a) of the NYHRL and § 8-101 of the NYCHRL provide the same protection. N.Y. EXEC. L. § 296(1)(a); N.Y.C. ADMIN. CODE § 8-101; *see Pace v. Paris Maintenance Co.*, 107 F. Supp. 2d 251, 266 (S.D.N.Y. 2000) (stating "there is no difference between the rights granted under the NYCHRL and the rights granted under the NYHRL and no difference in 'the manner or

amount of proof required.'") (citing *Buckhout v. N.Y.C. Comm'n on Human Rights*, 203 A.D.2d 67, 609 N.Y.S.2d 608 (1st Dep't 1994).

### A. Individual Liability

Plaintiff has brought suit directly against the individual defendants for violating Title VII. However, it is well settled that "individuals are not subject to liability under Title VII." *Wrighten v. Glowski*, 232 F.3d 119, 120 (2d Cir. 2000); *see also Tomka v. Seiler Corp.*, 66 F.3d 1295, 1313 (2d Cir. 1995), *abrogated on other grounds by Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742 (1998); *accord Mandell v. County of Suffolk*, 316 F.3d 368, 377 (2d Cir. 2003). To the extent plaintiff seeks to hold the individual defendants liable under Title VII for alleged sexual harassment and/or creating a hostile work environment, these claims cannot proceed.

Individual liability is permitted under the NYHRL, however. *See Tomka*, 66 F.3d at 1313; *see also Gregory v. Daly*, 243 F.3d 687, 689 n.1 (2d Cir. 2001). A defendant may be held individually liable under NYHRL § 296 as either an employer or as an "aider or abetter." *See* N.Y. EXEC. L. §§ 296(1), (6); *Prince v. Madison Square Garden*, --- F. Supp. 2d ---, No. 04 Civ. 8151, 2006 WL 906136, at *10 (S.D.N.Y. Apr. 10, 2006). Individual liability under § 296(1) has been limited to "supervisors, who themselves, have the authority to 'hire and fire employees.'" *Gentile v. Town of Huntington*, 288 F. Supp. 2d 316, 321 (E.D.N.Y. 2003) (quoting *Tomka*, 66 F.3d at 1317).

The Complaint does not specifically allege which, if any, of the individual defendants has the authority to "hire and fire" plaintiff. Indeed, while the Complaint indicates that Clark was the Department chair when plaintiff was hired, it does not state who hired her. However, plaintiff is secretary for the Department, which both Clark and Evans chaired at different times. As chair, they

6

ostensibly had the authority to hire and fire her. With respect to Stuhr and Arendacs, however, nothing in the Complaint indicates that they had supervisory power over plaintiff or the authority to "hire and fire" her. Therefore, while the NYHRL and NYCHRL claims survive this hurdle as to Clark and Evans, it does not as to Stuhr and Adrendacs.

With respect to the aiding and abetting provision, there are conflicting interpretations of § 296 among state and federal courts as to whether an individual may be liable for aiding and abetting discriminatory conduct. *See King v. Town of Wallkill*, 302 F. Supp. 2d 279, 295-96 (S.D.N.Y. 2004) (Conner, J.). The Second Circuit in *Tomka v. Seiler Corporation*, held that under the "aiding and abetting" language of § 296(6) "a defendant who actually participates in the conduct giving rise to a discrimination claim may be held personally liable under the [NY]HRL." 66 F.3d at 1317. The NYCHRL contains the same "aiding and abetting" provision. *See Stamm v. N.Y. City Transit Auth.*, No. 04 CV 2163, 2006 WL 1027142, at *13 (E.D.N.Y. Feb. 7, 2006). The New York state courts have not uniformly accepted the Second Circuit's interpretation of state law in *Tomka*, and two New York Appellate Divisions located within the Southern District of New York have in fact reached divergent conclusions on this issue. *Compare Steadman v. Sinclair*, 223 A.D.2d 392, 393, 636 N.Y.S.2d 325 (1st Dep't 1996) (citing, *inter alia*, *Tomka* for the proposition that "'an individual may be held liable for aiding discriminatory conduct'" under the NYHRL (citation omitted)), *with Trovato v. Air Express Int'l*, 238 A.D.2d 333, 334, 655 N.Y.S.2d 656 (2d Dep't 1997) (acknowledging contrary conclusions of *Tomka* and *Steadman*, but concluding that "[t]o find a coemployee liable as an aider and abettor would ignore the statutory and legal authority limiting the parties who may be sued for employment discrimination"). This confusion has also caused several district courts to decline supplemental jurisdiction over NYHRL claims. *See King*, 302 F. Supp. 2d

7

at 296. Nevertheless, the majority of the other federal district courts in New York considering the issue have elected to follow the lead of the Second Circuit in *Tomka* and apply its rule of "actual participation" to hold individual defendants personally liable under the NYHRL for discriminatory conduct via § 296(6). *See, e.g.*, *Perks v. Town of Huntington*, 251 F. Supp. 2d 1143, 1160-61 (E.D.N.Y. 2003); *Jong-Fwu v. Overseas Shipholding Group, Inc.*, No. 00 Civ. 9682, 2002 WL 1929490, at *7 n.3 (S.D.N.Y. Aug. 21, 2002); *Lewis v. Triborough Bridge & Tunnel Auth.*, 77 F. Supp. 2d 376, 379 & n.6 (S.D.N.Y. 1999); *Petrosky v. N.Y. State Dep't of Motor Vehicles*, 72 F. Supp. 2d 39, 64-65 (N.D.N.Y. 1999); *Pell v. Trs. of Columbia Univ.*, No. 97 Civ. 0193, 1998 WL 19989, at *21 (S.D.N.Y. Jan. 21, 1998). We deem this approach to be the most prudent because, as noted by Judge Young in the Eastern District, although the Second Circuit's ruling in *Tomka* "has been criticized, it is binding upon this Court." *Perks*, 251 F. Supp. 2d at 1160; *see also Petrosky*, 72 F. Supp. 2d at 65 (stating that "the most important precedential authority presented is from the Second Circuit as this Court is bound by its decisions of law"). We will, therefore, exercise supplemental jurisdiction to apply the clearly articulated rule of *Tomka* to the facts of the present case.

The relevant statutory framework provides an appropriate starting point for our analysis of the present case. N.Y. EXEC. LAW § 296(6) provides that "[i]t shall be an unlawful discriminatory practice for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this article, or to attempt to do so." The retaliation provision of the NYHRL, N.Y. EXEC. LAW § 296(7), provides that "[i]t shall be an unlawful discriminatory practice for any person engaged in any activity to which this section applies to retaliate or discriminate against any person because he or she has opposed any practices forbidden under this article or because he or she has filed a

8

complaint, testified or assisted in any proceeding under this article." These two subsections are read in concert and an individual defendant may be held liable under the NYHRL for actual participation in or aiding and abetting an employer's retaliatory conduct. *See Naftchi v. N.Y. Univ.*, 14 F. Supp. 2d 473, 491-92 (S.D.N.Y. 1998) (applying § 296(6) to NYHRL retaliation claim and concluding that there was a triable issue of fact as to one defendant who had participated in decisions to deny raises to the plaintiff and to take away his office space); *Steadman*, 223 A.D.2d at 393 (concluding that the defendant had stated a viable NYHRL retaliation counterclaim under § 296(6) when she alleged that the plaintiff brought an action against her at the instigation of the defendant's employer in retaliation for filing an EEOC complaint). In New York, liability must first be established as to the employer/principal before accessory liability can be found as to an alleged aider and abettor. *DeWitt v. Lieberman*, 48 F. Supp. 2d 280, 293-94 (S.D.N.Y. 1999) (citing *Murphy v. ERA United Reality*, 251 A.D.2d 469, 471, 674 N.Y.S.2d 415 (2d Dep't 1998); *Hill v. Children's Vill.*, 196 F. Supp. 2d 389, 401 (S.D.N.Y. 2002). Accordingly, we turn to the facts of the present case in order to determine whether employer/principal liability exists based on the Complaint's allegations and whether any of the named defendants actually participated in the actions giving rise to plaintiff's claims.

### B. <u>Disparate Treatment or Discriminatory Action</u>

Plaintiff alleges that defendants engaged in discriminatory behavior on the basis of her gender. Claims of employment discrimination brought pursuant to Title VII are analyzed under the burden-shifting approach set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-03 (1973). To establish a prima facie case of gender based employment discrimination, plaintiff must show that:

> (1) she is a member of a protected class; (2) she is performing her duties satisfactorily; (3) she suffered an adverse employment action; and (4) the action occurred under circumstances giving rise to an inference of discrimination based on her membership in the protected class.

*Dawson v. Bumble & Bumble*, 398 F.3d 211, 216 (2d Cir. 2005); *Terry v. Ashcroft*, 336 F.3d 128, 138 (2d Cir. 2003). An adverse employment action is defined as a "'materially adverse change' in terms and conditions of employment," that "is more disruptive than mere inconvenience or alteration of job responsibilities." *Fairbrother v. Morrison*, 412 F.3d 39, 56 (2d Cir. 2005); *Weeks v. New York State*, 273 F.3d 76, 85 (2d Cir. 2001). An adverse change may be indicated by "termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices . . . unique to a particular situation." *Weeks*, 273 F.3d at 85 (quoting *Galabya v. N.Y City Bd. of Educ.*, 202 F.3d 636, 640 (2d Cir. 2000) (citations omitted)). New York courts require the same standard of proof for claims brought under the NYHRL as those brought pursuant to Title VII, and NYHRL claims are therefore analyzed in the same manner as Title VII claims. *See Quinn v. Green Tree Credit Corp.*, 159 F.3d 759, 765 (2d Cir.1998), *abrogated in part on other grounds by Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002). Therefore, the Title VII, the NYHRL and the NYCHRL claims will be analyzed together. However, given the different standards of proof between the federal and state law claims, our holding with respect to plaintiff's NYHRL claims shall apply with equal force to the NYCHRL claims, but the Title VII claims will be analyzed separately. *See, e.g., Cruz*, 202 F.3d at 565 n.1.

Plaintiff alleges that she suffered an adverse employment action because Evans issued her an unjustified negative performance review and now monitors her telephone calls and whereabouts.

10

Plaintiff's reliance on the performance review to establish an adverse employment action is wholly without merit. The performance review gives plaintiff the highest scores in every category except one: she received the second highest rating in that category. Aside from a few hand written comments noting some negativity in her attitude toward certain colleagues, the review praises her ability to efficiently and effectively complete her work. This is not, as a matter of law, an adverse employment action. (*See infra* Part II.D.)

Plaintiff also fails to plead any facts that would create an inference that any action taken by Evans or any other defendant was based upon her gender. *See Alfano v. Costello*, 294 F.3d 365, 373 (2d Cir. 2002) (a claim of disparate treatment requires a showing that the adverse employment occurred as a result of her gender). With regard to plaintiff's allegations of reduced secretarial functions during 2001 to 2003, we find there is no basis for an inference of gender discrimination. Moreover, we find no basis in plaintiff's allegation that the pornographic viewing by Clark in his office supports a claim of disparate treatment on the basis of her gender as there was no consequent adverse employment action. Plaintiff does not allege that she ever watched any of the videos, or witnessed Clark viewing the videos, or saw Clark masturbating, or even heard sexually suggestive sounds from Clark's office. It is unclear how plaintiff knew Clark was watching these materials, other than her statements that Clark would keep his door shut and that she would receive videos via Department mail. Plaintiff makes no allegations that she witnessed, in any way, the pornographic materials, except as illustrated on the box covers.[2] Plaintiff has failed to plead a prima facie case of disparate treatment on the basis of her gender, and thus her claims under NYHRL and NYCHRL against all defendants are dismissed. To the extent that plaintiff asserts discrimination based on a

---

[2] It appears that Clark kept all the videos in his office.

hostile work environment, we will consider this theory.

### C. Sexual Harassment and Hostile Work Environment

In order to establish a violation of Title VII under a hostile work environment theory, a plaintiff is required to show: "(1) that the workplace was permeated with discriminatory intimidation that was sufficiently severe or pervasive to alter the conditions of [her] work environment, and (2) that a specific basis exists for imputing the conduct that created the hostile environment to the employer." *Richardson v. N.Y. State Dep't of Corr. Serv.*, 180 F.3d 426, 436 (2d Cir. 1999) (internal quotation marks and citation omitted). "[T]o be actionable under the statute, a sexually objectionable environment must be both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim did perceive to be so." *Faragher v. City of Boca Raton*, 524 U.S. 775, 787 (1998); *see also Harris*, 510 U.S. at 21-22; *Torres v. Pisano*, 116 F.3d 625, 631 (2d Cir. 1997). Sexual harassment is assessed based on the totality of the circumstances. *See Harris*, 510 U.S. at 23; *Carrero v. N.Y. City Hous. Auth.*, 890 F.2d 569, 577-78 (2d Cir. 1989). The Supreme Court has provided guidance and established a nonexclusive list of factors that should be weighed when considering the totality of circumstances in determining whether a workplace is permeated with discrimination. These factors include: (1) the frequency and severity of the conduct; (2) whether the conduct was physically threatening, humiliating or merely an offensive utterance; (3) whether it unreasonably interferes with the employee's job performance; and (4) the effect on the employee's psychological well-being. *See Harris*, 510 U.S. at 23; *see also Kodengada v. Int'l Bus. Machs. Corp.*, 88 F. Supp. 2d 236, 242 (S.D.N.Y. 2000) (citing *Williams v. County of Westchester*, 171 F.3d 98, 100 (2d Cir. 1999)). Isolated incidents of harassment

ordinarily will not support a hostile work environment claim. *See, e.g.*, *Kotcher v. Rosa & Sullivan Appliance Ctr., Inc.*, 957 F.2d 59, 62 (2d Cir. 1992). Conduct that can be characterized as a few isolated incidents, teasing, casual comments or sporadic conversation will not be deemed to create a hostile work environment. *See Faragher*, 524 U.S. at 787; *Quinn*, 159 F.3d at 768. However, "'even a single episode of harassment, if severe enough, can establish a hostile work environment.'" *Richardson*, 180 F.3d at 437 (quoting *Torres*, 116 F.3d at 631 n.4). Of course, "'[t]here is neither a threshold magic number of harassing incidents that gives rise, without more, to liability as a matter of law, nor a number of incidents below which a plaintiff fails as a matter of law to state a claim.'" *Whidbee v. Garzarelli Food Specialities, Inc.*, 223 F.3d 62, 70 (2d Cir. 2000) (quoting *Richardson*, 180 F.3d at 439). "It is axiomatic that mistreatment at work, whether through subjection to a hostile environment or through such concrete deprivations as being fired or being denied a promotion, is actionable under Title VII only when it occurs because of an employee's sex, or other protected characteristic." *Brown v. Henderson*, 257 F.3d 246, 252 (2d Cir. 2001).

Plaintiff's allegations are primarily focused on Clark's conduct. Accepting plaintiff's claims as true, as is required, Clark's behavior is questionable. Plaintiff primarily alleges that Clark received pornographic material at the office, viewed these tapes during the day and rushed past her to the men's room "with his face flushed" approximately every twenty minutes. Plaintiff also alleges several incidents involving Clark and his daughter. However, such behavior, without more, does not rise to the level of a hostile work environment. We are reminded that Title VII is not "a general civility code." *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81 (1998); *see Tenney v. Essex County/Horace NYE Home*, No. 05 CV 0506, 2006 WL 126766, at *4 (N.D.N.Y. Jan. 17, 2006). While this Court is sympathetic to plaintiff's position, these allegations are insufficient to

13

raise a hostile work environment claim because plaintiff never saw the videos, witnessed Clark watch the videos, or witnessed Clark performing sexual acts.

### D. Retaliation

Title VII also prohibits retaliatory acts by stating it "shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because [such employee] has opposed any practice made an unlawful practice by this subchapter." 42 U.S.C. § 2000e-3(a). Retaliatory acts are also unlawful under the NYHRL. *See* N.Y. EXEC. L. § 296(1)(e). Retaliation claims are examined under the burden-shifting rules established by the Supreme Court in *McDonnell Douglas Corp. v. Green*. *See Quinn*, 159 F.3d at 764; *see also Knight v. City of New York*, 303 F. Supp. 2d 485, 495 (S.D.N.Y. 2004) (stating that courts considering retaliation claims brought pursuant to Title VII and the NYHRL utilize the same analytical framework for both the federal and state claims). In the summary judgment context, (1) plaintiff must establish a *prima facie* case of retaliation, (2) defendant then has the burden of pointing to evidence that there was a legitimate, nonretaliatory reason for the complained of action, and (3) if defendant meets its burden, plaintiff must demonstrate that there is sufficient evidence to enable a reasonable jury to find the proffered legitimate reason merely a pretext for impermissible retaliation. *See Quinn*, 159 F.3d at 764 n.5; *see also Gallagher v. Delaney*, 139 F.3d 338, 349 (2d Cir. 1998).

To establish a prima facie case of retaliation, plaintiff must show (1) participation in a protected activity that is known to the defendant, (2) an employment decision or action disadvantaging the plaintiff, and (3) a causal connection between the protected activity and the adverse decision. *See Richardson*, 180 F.3d at 443; *Van Zant v. KLM Royal Dutch Airlines*, 80 F.3d

708, 713 (2d Cir. 1996). To qualify as a protected activity it is enough that plaintiff made informal complaints of discrimination to management. *See Gregory*, 243 F.3d at 700-01.

Plaintiff alleges that negative elements of her performance review constitute a retaliatory action by Evans and defendant Fordham. However, this action was not adverse, nor is there any evidence that it disadvantaged plaintiff. *See Fairbrother*, 412 F.3d at 57; *Richardson*, 180 F.3d at 443-44 (rejecting a claim of adverse employment action based upon a performance review of "average" rather than "excellent"). Nor does the fact that Evans monitors plaintiff's phone calls and whereabouts more carefully, rise to the level of retaliatory action. *See Figueroa v. City of New York*, 198 F. Supp. 2d 555, 568 (S.D.N.Y. 2002) (heightened supervision is not adverse employment action).

Plaintiff's Title VII allegations of diminished secretarial functions fail to establish that the work reductions were sufficiently adverse, as they do not specify the severity or degree. *See Galabya*, 202 F.3d at 640 (an adverse employment action may involve "significantly diminished material responsibilities"). In fact, plaintiff did not complain about the diminished responsibilities until over two years later. Plaintiff does not claim that any such adverse treatment is currently being imposed. Under these facts, the Court finds that plaintiff has not adequately pled a claim of retaliation. Defendants' motion to dismiss is granted as to all claims of retaliatory action.

### E. Liability Against Stuhr, Arendacs and Fordham

As already indicated, liability must be established as to the principal before accessory liability can be found as to an alleged aider and abettor. *See DeWitt*, 48 F. Supp. 2d at 293-94. Under New York law, an "'employer cannot be held liable for an employee's discriminatory act unless the

employer became a party to it by encouraging, condoning, or approving it.'" *State Div. of Human Rights v. St. Elizabeth's Hosp.*, 66 N.Y.2d 684, 687, 487 N.E.2d 268, 496 N.Y.S.2d 411 (1985) (quoting *Totem Taxi, Inc. v. State Human Rights Appeal Bd.*, 65 N.Y.2d 300, 305, 480 N.E.2d 1075, 491 N.Y.S.2d 293 (1985)). Under the NYHRL, an employer may be liable for inaction in certain circumstances:

> Condonation, which may sufficiently implicate an employer in the discriminatory acts of its employee to constitute a basis for employer liability under the Human Rights Law, contemplates a knowing, after-the-fact forgiveness or acceptance of an offense. An employer's calculated inaction in response to discriminatory conduct may, as readily as affirmative conduct, indicate condonation.

*Ross v. Mitsui Fudosan, Inc.*, 2 F. Supp. 2d 522, 530 (S.D.N.Y. 1998) (quoting *St. Elizabeth's Hosp.*, 66 N.Y.2d at 687). However, as our above discussion indicates, liability cannot be established as to Clark or Evans. If there is no liability against the principal, there can be no liability against the alleged aider and abetter. Therefore, the claims against these defendants under NYHRL and NYCHRL are dismissed. For these same reasons the remaining claim against Fordham under Title VII is also dismissed as plaintiff cannot demonstrate sexual discrimination resulting in a hostile work environment or retaliation. *See Meritor Sav. Bank*, 477 U.S. at 66.

### F. Procedural Defects

Defendants sought to dismiss the claims on procedural grounds on the basis that the statute of limitations had expired and plaintiff failed to exhaust administrative remedies. However, as we have already dismissed all claims against all defendants we will not consider these arguments.

III. **Motion to Strike**

Defendants' make a FED. R. CIV. P. 12(f) motion to strike certain inflammatory statements made in the Complaint. A court has the discretion to strike from the pleadings "any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." FED. R. CIV. P. 12(f). However, as we have already dismissed the claims as to all the defendants, this motion is dismissed as moot.

## CONCLUSION

For all of the foregoing reasons, the motion to dismiss of defendants John Richard Clark, Harry B. Evans, David Stuhr, Georgina Arendacs and Fordham University is granted in full with prejudice. Defendants' motion to strike is denied as moot.

SO ORDERED.

Dated: White Plains, New York
       June 21, 2005

*[signature: William C. Conner]*
Sr. United States District Judge